# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| ROBERT HAYES HOFFMAN, | ) | |
| | ) | Case No. 18-00774-RLM-7 |
| Debtor. | ) | |
| | ) | |
| PETER BROSCOE and EQUITY TRUST COMPANY CUSTODIAN f/b/o PETER BROSCOE IRA, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | Adv. Pro. No. |
| v. | ) | |
| | ) | |
| ROBERT HAYES HOFFMAN, | ) | |
| | ) | |
| Defendant. | ) | |

## PETER BROSCOE'S COMPLAINT TO DETERMINE INDEBTEDNESS NON-DISCHARGEABLE

Plaintiffs, Peter Broscoe and Equity Trust Company Custodian f/b/a Peter Broscoe (together "**Broscoe**"), by counsel, for his *Complaint to Determine Indebtedness Non-Dischargeable* ("**Complaint**"), against Robert Hayes Hoffman ("**Defendant**"), states as follows:

### Jurisdiction and Venue

1. This Court has jurisdiction under 28 U.S.C. §§ 157 and 1334.

2. Venue is proper in this Court and in this District under 28 U.S.C. §§ 1408 and 1409.

3. The subject matter of this Complaint is a core proceeding as defined in 28 U.S.C. §157.

4. The statutory authority for the relief requested by Broscoe in this matter is 11 U.S.C. § 523(d).

1

5. Pursuant to Rules 7008 and 9027(a) of the Federal Rules of Bankruptcy Procedure, Broscoe consents to this Court entering a final order and/or judgment on the claims he raises and the relief he requests herein.

6. The deadline for Broscoe to bring an action to determine dischargeability, to object to the entry of discharge, or to seek dismissal of the above-captioned matter under 11 U.S.C. § 707 is August 31, 2018, which time has not yet expired.

## Parties to this Action

7. Broscoe, is a resident of Indiana, with an address of 1642 West Smith Valley Road, Suite A, Greenwood, IN 46142.

8. Robert Hayes Hoffman is a resident of Indiana, with an address of 2899 Osterly Court, Greenwood, IN 46143.

## Procedural History, General Factual Background and Allegations

9. Debtor, Robert Hayes Hoffman (hereinafter, "**Debtor**") initiated Case No. 18-00774-RLM-7 (the "**Chapter 7 Bankruptcy**"), by the filing of a voluntary petition under Chapter 7 of Title 11 of the United States Code (the "**Bankruptcy Code**") on February 14, 2018 (the "**Petition Date**").

10. The Meeting of Creditors pursuant to 11 U.S.C. § 341 was conducted on March 13, 2018.

11. The current deadline to file an action to determine dischargeability is August 31, 2018. [*See* Filing No. 45].

12. Broscoe is a creditor of Debtor's as indicated by Debtor on his *Amended Schedules* filed on March 13, 2018 – the date the Meeting of Creditors was conducted. [*See* Filing No. 23, p. 11].

2

13. In or about August 2016, Debtor requested a short-term loan from Broscoe, to help him with ongoing expenses.

14. Broscoe agreed to his request and obtained a loan of Fifty Thousand Dollars and Zero Cents ($50,000.00) from his Individual Retirement Account with Equity Trust Company 9th.

15. On September 2, 2016, Debtor executed and delivered a Promissory Note (the "**Note**") in the original principal amount of Fifty Thousand Dollars and Zero Cents ($50,000.00), which evidenced the loan (the "**Loan**"). A true, accurate, and authentic copy of the Note is attached hereto as **Exhibit 1** and incorporated herein.

16. The Note is secured by a mortgage on real estate commonly known and referred to as 2899 Osterly Court, Greenwood, IN 46143 (the "**Mortgage**"). A true, accurate, and authentic copy of the Mortgage is attached hereto as **Exhibit 2** and incorporated herein.

17. The Note is also secured by a 2009 Jaguar XF Premium Luxury, VIN Number XXXXXXXXXXXXX2353 (the "**Vehicle**"). A true, accurate, and authentic copy of the Car Title is attached hereto as **Exhibit 3** and incorporated herein.

18. Pursuant to the terms of the Note, Debtor was obligated to repay Sixty-Five Thousand Dollars and Zero Cents ($65,000.00) by November 30, 2016.

19. Pursuant to the terms of the Note, if the full amount was not received by November 30, 2016, the balance due as of December 1, 2016 would increase to Eighty-Four Thousand Five Hundred and Zero Cents ($84,500.00).

20. As of the filing of this Complaint, Debtor has not made any payment on the balance due under the Note.

21.     As a result, and pursuant to the terms of the Note, as of the Petition Date, Debtor's indebtedness to Broscoe is not less than Eighty-Four Thousand Five Hundred and Zero Cents ($84,500.00), plus interest at the rate of 18% *per annum* from December 1, 2016 to satisfaction of the obligations due under the Note, and attorneys' fees and costs of collection[1], without relief from valuation and appraisement laws (the "**Indebtedness**").

22.     Prior to the Petition Date, Debtor was a financial advisor, registered with the Financial Industry Regulatory Authority ("**FINRA**") from 1999 to 2017.

23.     From July 2006 to February 2017, Debtor was registered with Woodbury Financial Services, Inc. ("**Woodbury**") as an Investment Company Shares and Variable Contracts Representative and as a General Securities Representative.

24.     On December 31, 2014, Debtor became subject to an IRS tax lien in the amount of $106,991.00 (the "**Tax Lien**").

25.     Article V, Section 2 of the FINRA By-Laws, and FINRA Rules 1122 and 2010, required Debtor to, among other things, file an Application for Registration with respect to membership or registration.

26.     Under Article V, Section 2 of the FINRA By-Laws, Debtor was also required to keep his application current "at all times by supplementary amendments".

27.     Under Article V, Section 2 of the FINRA By-Laws, such amendment is required to "be filed with the Corporation not later than 30 days after learning of the facts or circumstances giving rise to the amendment. If such amendment involves a statutory disqualification as defined in Section 3(a)(39) and Section 15(b)(4) of the Act, such amendment shall be filed not later than ten days after such disqualification occurs".

---

[1] Pursuant to In Re Valentine, 104 B.R.67, 72 (Bankr.S.D.Ind. 1988) American Founders Bank asserts that all attorneys' fees incurred by American Founders Bank in pursuing a determination that Debtors' obligations are non-dischargeable and/or in pursuing efforts for the denial of Debtors' discharge, are also non-dischargeable.

4

28. The FINRA By-laws and rules further required Debtor to disclose the IRS Tax Lien to FINRA by filing a Form U4 Amendment.

29. Debtor failed to disclose the Tax Lien within 30 Days, as required, and instead continued to act as a financial advisor.

30. Debtor finally disclosed the Tax Lien, nine (9) months later, on September 25, 2015, after FINRA initiated an inquiry.

31. Following his willful failure to disclose the unsatisfied Tax Lien within 30 days of receiving notice thereof, by amending his Form U4, Debtor was the subject of a disciplinary action and submitted a FINRA Letter of Acceptance, Waiver and Consent ("**FINRA Suspension Letter**"). A true, accurate, and authentic copy of the FINRA Suspension Letter is attached hereto as **Exhibit 4.**

32. In the FINRA Suspension Letter Debtor consented to a 3-month suspension of his license and a deferred fine of $5,000.00.

33. In or about the 4th quarter of 2015, two (2) of Debtor's biggest clients, including Kris and Sandy Dielman (the "**Dielmans**") severed ties with him.

34. By the summer of 2016, Debtor was financially strapped, had no "deals in the pipeline" (as he had represented to Broscoe), and no other avenue to generate income.

35. In or about September 2016, Debtor requested a loan from the Dielmans. The Dielmans declined to extend the loan to him.

36. Debtor's request for a loan from the Dielmans, along with other noted anomalies with Debtor's representation of the Dielmans' interests, prompted the Dielmans to look closely into Debtor's discharge of his duties to them.

37. In or about September 2, 2016, Debtor also requested and obtained the Loan from Broscoe. See, Exhibit 1.

38. To induce Broscoe to make the Loan, evidenced by the Note, Debtor presented him with his 2014 and 2015 IRS Tax Returns reflecting income in excess of Three Hundred Thousand Dollars ($300,000.00). A true, accurate, and authentic copy of Debtor's 2014 and 2015 tax returns (the "**Tax Returns**") are attached to the Complaint as **Exhibit 5** and incorporated herein.

39. To induce Broscoe to make the Loan, Debtor represented to Broscoe that he was poised to maintain or exceed the same income for 2016 that was reflected on the Tax Returns for 2104 and 2015.

40. To induce Broscoe to make the Loan, Debtor represented to Broscoe that his employment with Woodbury was secure, and his license was in good standing.

41. To induce Broscoe to make the Loan, Debtor also represented to Broscoe that he had millions of dollars of "deals in the pipeline" of investments for prominent NFL Players, and that the money was already being invested.

42. To induce Broscoe to make the Loan, Debtor also represented that Woodbury's underwriting department was running behind on verifying and authorizing the new investments, causing the delay in his commission payment.

43. At the time of Debtor's statements to Broscoe, there were no funds in underwriting, waiting to be released to Debtor as Debtor stated.

44. To induce Broscoe to make the Loan, Debtor also stated to Broscoe that he had other deals worth millions "in the pipeline".

45. At the time of Debtor's statements to Broscoe, Debtor had no deals "in the pipeline".

46. During that same period, Woodbury was becoming aware of the liberties Debtor took with clients' investments and both Debtor and Woodbury were the subject of numerous complaints and grievances.

47. On or about January 2017, the Dielmans filed a complaint alleging, among other things, potential unsuitable recommendations, unauthorized transactions, excessive trading, and private securities transactions.

48. Around the same time, Louis Vasquez ("**Vasquez**"), another former client of Debtor, also filed a complaint against Woodbury and Debtor.

49. FINRA immediately initiated an internal investigation of the matter and sent Debtor a request for on-the-record testimony, pursuant to FINRA Rule 8210.

50. Debtor elected not to appear and provide on-the-record testimony to disprove all allegations of wrongdoing.

51. As a result, and pursuant to its rules, FINRA permanently barred Debtor from all activities as a financial advisor, per the terms of FINRA Letter of Acceptance, Waiver and Consent ("**Final Disbarment Letter**"). A true, accurate, and authentic copy of the Final Disbarment Letter is attached hereto as **Exhibit 6** and incorporated herein.

52. The FINRA panel ordered Woodbury Financial Services to pay the Dielmans and Vasquez damages for failure to supervise Debtor.

53. At the time Broscoe made the Loan to Debtor, Broscoe was not aware of the Tax Lien.

54. At the time Broscoe made the Loan to Debtor, Broscoe was not aware of the FINRA disciplinary actions.

55. At the time Broscoe made the Loan to Debtor, Broscoe was not aware of Debtor's precarious financial condition.

56. Debtor represented to Broscoe that he had already earned hundreds of thousands of dollars in 2016 and delays in underwriting were the only reason he needed the short-term Loan until other funds were released to him.

57. However, Broscoe later learned there was no money in underwriting.

58. From the time the Tax Lien was filed, Debtor's ability to practice as a financial advisor and generate income was greatly diminished due to FINRA's rules.

59. The loss of both the Dielmans' account and a second significant client in 2015, compounded by his troubles with the IRS and pending FINRA investigations and potential disciplinary action, caused Debtor to struggle to generate income.

60. At the time Broscoe made the Loan to Debtor, Debtor could not generate income and would not be able to repay Broscoe. However, Debtor represented to Broscoe that exact opposite was true.

61. Debtor concealed material facts from Broscoe and, through false representations, false pretenses and fraud, Debtor induced Broscoe into making the Loan to Debtor.

62. After filing the Chapter 7 Bankruptcy, Debtor represented to Broscoe that he would reaffirm the Indebtedness and repay the Loan.

63. Based on such representations, on or about March 3, 2018, Debtor and Broscoe executed a Note Modification Form (the "**Modification**"). Under the terms of

8

the Modification, the Note's maturity date was extended to May 31, 2019. A true, accurate, and authentic copy of the Modification is attached hereto as **Exhibit 7** and incorporated herein.

64. Broscoe relied on Debtor's oral promises to reaffirm the debt and the executed the Modification post-bankruptcy filing.

65. However, these too, were false representations and false pretenses used by Debtor to continue to defraud Broscoe as no payments were received pursuant to the Modification.

66. Broscoe has incurred and continues to incur expenses, including among other things, reasonable attorneys' fees, and costs, in his efforts to obtain repayment of the Loan.

### Non-Dischargeability under 11 U.S.C. §523(a)(2)(A)

### False Representations

67. Broscoe incorporates each of the foregoing paragraphs by reference as if fully set forth herein below.

68. 11 U.S.C. §523(a)(2) provides that a debtor shall not be discharged from an individual debt:

> for money, property, services, or an extension, renewal, or refinancing credit, to the extent obtained by –
>
> > (A) false pretenses, or false representation, or actual fraud, other than a statement respecting the Debtor's or insiders financial condition.

69. As set forth above, Debtor made false representations to Broscoe respecting his financial condition and obtained the Loan evidenced, by among other things, the Note through false representations.

9

70. Beginning on or before September 2016, through and including March 2018, Debtor made numerous false representations to Broscoe concerning his financial condition and ability to repay the Loan within ninety (90) days, including, without limitation the following:

   a. The existence of earned income due and payable to him in the amount of $250,000.00 - $300,000.00;

   b. The existence of earned income in underwriting that would be released within ninety (90) days of making the Loan;

   c. The existence of millions of dollars of "deals in the pipeline" that would provide income to Debtor;

   d. The need for the Loan only as a bridge until payments were received by Debtor;

   e. The existence of significant accounts and clients who Debtor represented used his services for their investment needs;

   f. The purpose of the Loan from Broscoe; and

   g. Debtor's ability to continue to practice in his profession and generate income to repay the Loan.

(collectively the "**False Representations**").

71. Debtor knew the False Representations were false.

72. Debtor made the False Representations with reckless disregard for the truth.

73. Debtor made the False Representations with intent to deceive.

74. Broscoe, in reasonable reliance upon the False Representations, mad the Loan to Debtor.

75. Debtor obtained the Loan from Broscoe by the False Representations.

76. The Indebtedness owed by Debtor to Broscoe is therefore excepted from discharge under 11 U.S.C. §523(a)(2)(A) based on Debtor's False Representations used in obtaining the Loan.

### False Pretenses

77. Broscoe incorporates each of the foregoing paragraphs by reference as if fully set forth herein below.

78. As set forth above, Debtor created false impressions in Broscoe respecting his financial condition and obtained the Loan through false pretenses.

79. Beginning on or before September 2016, through and including March 2018, Debtor, by and through his False Representations, conduct, and failures to disclose material information to Broscoe, created false impressions in Broscoe concerning Debtor's financial condition and ability to repay the Loan within ninety (90) days (the "**False Pretenses**").

80. Debtor knew the False Pretenses were false.

81. Debtor created the False Pretenses with reckless disregard for the truth.

82. Debtor created the False Pretenses with intent to deceive.

83. Broscoe, in reasonable reliance upon the False Pretenses, made the Loan to Debtor.

84. Debtor obtained the Loan from Broscoe by False Pretenses.

85. The Indebtedness owed by Debtor to Broscoe is therefore excepted from discharge under 11 U.S.C. §523(a)(2)(A), based on Debtor's False Pretenses in obtaining the Loan.

**Actual Fraud**

86.　Broscoe incorporates each of the foregoing paragraphs by reference as if fully set forth herein below.

87.　As set forth above, Debtor presented himself and his financial condition to Broscoe in a manner intended to deceive, trick or cheat Broscoe.

88.　Beginning on or before September 2016, through and including March 2018, Debtor, by and through the False Representations, False Pretenses, expressions, conduct, and failures to disclose, presented himself and his financial condition to Broscoe in a manner intended to deceive, trick or cheat Broscoe by making the False Representations and False Pretenses.

89.　Debtor misled Broscoe concerning his financial condition.

90.　Debtor misled Broscoe concerning his ability to repay the Loan.

91.　Debtor misled Broscoe concerning his professional standing.

92.　The acts and omissions of Debtor were carried out with the intent to defraud Broscoe.

93.　Debtor obtained the Loan from Broscoe as a result of his fraud.

94.　The fraud perpetrated by Debtor upon Broscoe created the Indebtedness owed to Broscoe.

95.　The Indebtedness owed by Debtor to Broscoe is therefore excepted from discharge under 11 U.S.C. §523(a)(2)(A), based on actual fraud of Debtor in obtaining the Loan.

**WHEREFORE**, Plaintiff Peter Broscoe, by counsel, respectfully requests that the Court:

A.　Determine Debtor's Indebtedness to Broscoe non-dischargeable;

B.   Enter a judgment of non-dischargeability in the amount of not less than Eighty-Four Thousand Five Hundred Dollars and Zero Cents ($84,500.00), at the rate of 18% *per annum* from and after December 1, 2016 until satisfied, and attorneys' fees and costs of collection; and

C.   For all other relief deemed just and proper by the Court.

Respectfully submitted,

*/s/ Weston E. Overturf*
Weston E. Overturf, #27281-49
Sarah L. Fowler, #30621-49
MATTINGLY BURKE COHEN & BIEDERMAN LLP
155 E. Market St. Suite 400
Indianapolis, IN 46204
(317) 664-7136
Wes.overturf@mbcblaw.com

*Attorneys for Peter Broscoe*

13